```
 1                    UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3          HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

 4

 5   UNITED STATES OF AMERICA,        )
                                      )
 6                   PLAINTIFF,       )
                                      )
 7            vs.                     ) No. CR 17-0404-AB
                                      )
 8   1) ARLAN WESLEY HARRELL,         )
                                      )
 9                   DEFENDANT.       )
     _____)
10

11

12

13             REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                  WEDNESDAY, JULY 7, 2021

15                       8:07 A.M.

16                  LOS ANGELES, CALIFORNIA

17

18

19

20

21

22   _____

23             CHIA MEI JUI, CSR 3287, CCRR, FCRR
                FEDERAL OFFICIAL COURT REPORTER
24              350 WEST FIRST STREET, ROOM 4311
                LOS ANGELES, CALIFORNIA 90012
25                   cmjui.csr@gmail.com
```

```
 1    APPEARANCES OF COUNSEL:

 2    FOR THE PLAINTIFF:

 3            OFFICE OF THE UNITED STATES ATTORNEY
              BY: DEVON MYERS
 4            ASSISTANT U.S. ATTORNEY
              312 NORTH SPRING STREET, 13TH FLOOR
 5            LOS ANGELES, CALIFORNIA 90012
              (213) 894-2434
 6                          - AND -
              U.S. DEPARTMENT OF JUSTICE
 7            CHILD EXPLOITATION AND OBSCENITY SECTION
              BY:  LAUREN KUPERSMITH
 8            1301 NEW YORK AVENUE, NW, 11TH FLOOR
              WASHINGTON, D.C. 20530
 9            (202) 514-1564

10

      FOR THE DEFENDANT HARRELL:
11
              OFFICE OF THE FEDERAL PUBLIC DEFENDER
12            BY: KIM SAVO
              DEPUTY FEDERAL PUBLIC DEFENDER
13            321 EAST 2ND STREET
              LOS ANGELES, CALIFORNIA 90012
14            (213) 894-2854

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              LOS ANGELES, CALIFORNIA; WEDNESDAY, JULY 7, 2021

 2                            8:07 A.M.

 3                              - - -

 4              THE CLERK:  Calling CR 17-0404, United States of

 5    America versus Arlan Wesley Harrell.

 6              Counsel, please state your appearances, beginning

 7    with the government.

 8              MS. MYERS:  Good morning, Your Honor.

 9              Devon Myers on behalf of the United States.  I

10    believe with me at the virtual counsel table is Lauren

11    Kupersmith.

12              Can you hear me, Your Honor?

13              THE COURT:  It's very delayed.  Can you disconnect

14    and try to reconnect?

15         (Brief pause in the proceedings.)

16              MS. MYERS:  Devon Myers on behalf of the

17    United States.  And with me at virtual counsel table is CEOS

18    DOJ trial attorney Lauren Kupersmith.

19              THE COURT:  Good afternoon to you, Ms. Kupersmith.

20              And for the defense.

21              MS. SAVO:  Good morning, Your Honor.

22              Kim Savo from the federal public defender on

23    behalf of Mr. Harrell.  He and I are both appearing by

24    videoconferencing technology.

25              THE COURT:  Good morning to you both.
```

```
 1              And, Mr. Harrell, I just want to confirm with
 2    you -- we've done this numerous times, but I want to confirm
 3    with you -- is it okay with us to proceed via
 4    videoconferencing due in large part because of the COVID-19
 5    pandemic?
 6              THE DEFENDANT:  Yes, sir.  That's okay with me.
 7    Thank you.
 8              THE COURT:  All right.  So let's just cut to the
 9    chase here.  What are we going to do about this factual
10    basis?  Are we at an impasse?  Where are we?
11              Ms. Myers, can you speak first on this?
12              MS. MYERS:  Yes, Your Honor.
13              The government -- there is not a lot of difference
14    between our proposed factual basis and Ms. Savo's proposed
15    factual basis.
16              The government's concern is that Ms. Savo's
17    proposed factual basis just reduces the post to the language
18    of sexually explicit conduct or lascivious exhibition of the
19    genitals which is reversing to the statutory language.
20              And as the government submitted in its filing, our
21    concern is that, if that is the extent of the admission by
22    the defendant, then he may be able to later claim that his
23    plea was not knowing and voluntary.
24              And so, Your Honor, that's why we have included
25    the descriptions of what happened in the posts in our
```

1  proposed factual basis so that the Court can be assured that

2  there is a knowing and informed voluntary plea here.

3          I don't know if the Court needs more but --

4          THE COURT:  As it relates to that, obviously, I

5  know the issue is whether or not -- to ensure whether or not

6  that the plea is knowing and voluntary.

7          Tell me why you believe you need the facts

8  specifically as it relates to the images as opposed to

9  language that says, "visual depictions of child pornography

10  or minors engaged in sexually explicit conduct"?

11          MS. MYERS:  Because I think that the -- it's not

12  always clear what "engaged in sexually explicit conduct"

13  means, Your Honor.

14          THE COURT:  Okay.

15          Ms. Savo, tell me -- what's your issue -- let's be

16  candid here.  What's the issue about describing what the

17  government believes it would prove if the case went to trial

18  and as it relates to some of these images to avoid the

19  problem that Ms. Myers related?

20          I get the whole notion Rule 11, whether it

21  requires it or not.  But I do have a concern about later

22  down the line someone, whether it's Mr. Harrell or anyone,

23  can come in later and say, "Well, I didn't know what

24  sexually explicit conduct meant.  My lawyer and I never

25  talked about that.  I didn't understand, or I didn't

```
 1    understand what she was saying."  So tell me what's the
 2    issue here.
 3              MS. SAVO:  The issue here is that there is no Plea
 4    Agreement and that my client isn't required to admit
 5    anything that goes beyond what is necessary to prove the
 6    elements of the offense.
 7              THE COURT:  Right.  But how do we get to the issue
 8    of whether he knows what that means?  That's the concern.
 9              Are we to assume by saying, "Minor engaged in
10    sexually explicit conduct," that anyone -- first let's just
11    take this away from Mr. Harrell for a moment -- that anyone
12    knows exactly what that means?
13              MS. SAVO:  Because he has an attorney, and he's
14    been advised, and we've reviewed the discovery, and you are
15    going to ask him whether he has reviewed the discovery with
16    me.  And you are going to ask him if he has told me
17    everything that he knows about the offense.  I mean, it's
18    the entire plea colloquy.  That's what the point of the plea
19    colloquy is.
20              And more importantly, Your Honor, I -- I have done
21    innumerable open pleas in this district on cases involving
22    child pornography where I have not been forced to admit
23    anything outside of the sheet.
24              My intent was to have the client plead open to
25    what was in the Indictment but because I knew that this was
```

```
 1    going to become an issue I tried to resolve something with

 2    the government.

 3            But there is a point at which in this case I am

 4    not going to yield any further.  If the government wanted

 5    its own factual basis, then it could have extended a plea

 6    offer.

 7            And what they are trying to include is -- really

 8    goes to specific offense characteristics under the

 9    sentencing guidelines, and it doesn't go really to the

10    elements of the offense.

11            THE COURT:  Are you basically setting up an

12    argument that -- for sentencing as it relates to the

13    specific offense conduct?  Is that what this is about?

14            MS. SAVO:  I am not saying that.  I am saying

15    that's their burden, and it's not part of what's necessary

16    to prove the elements, and it's not anything my client has

17    to admit at this time.

18            THE COURT:  Okay.  We're going to proceed, and

19    we'll see if we get to the finish line.  If not, I guess

20    we'll just set it for trial.

21            MS. SAVO:  If the prosecution wants to state that

22    it would prove those facts, on the record, the government is

23    welcome to do that.  But it doesn't mean that my client has

24    to agree to those facts.

25            THE COURT:  Right.
```

```
 1            MS. SAVO:  My client will plead to what is
 2   necessary in order to prove the elements.
 3            THE COURT:  Are you suggesting that we should --
 4   or I should read both, basically, or talk to Mr. Harrell
 5   about the defense's proposed factual basis and then allow
 6   the government to say, if the case went to trial, they
 7   believe they would prove the following?
 8            MS. SAVO:  I am saying, if that's what the Court
 9   wants to do, I have no objection to that.  My objection is
10   the requirement that my client say that -- he has to admit
11   those facts.
12            THE COURT:  Okay.  Ms. Myers, what's your thought
13   about -- okay.  It will take longer, unfortunately, but
14   okay.
15            Government, you articulate what you believe you
16   will be able to show if the case went to trial.  I will ask
17   Mr. Harrell if he understands that, not whether or not he
18   admits to it, and then I will then have Ms. Savo read the
19   proposed factual basis, and I will ask him if he admits to
20   that, and he can say yes or no, and then we move forward.
21            MS. MYERS:  Okay, Your Honor.
22            THE COURT:  All right.  Let's do that, then.
23   Okay.
24            It's my understanding Mr. Harrell wants to enter a
25   plea of guilty to Counts 1 through 5 and 7 through 24.
```

```
 1                Is that correct, Ms. Savo?

 2           MS. SAVO:  Yes.

 3           THE COURT:  All right.  Mr. Harrell, before I can

 4   accept your plea of guilty, I need to make sure that you

 5   understand your rights, understand the nature of this

 6   proceeding.  We're going to be here for probably 30 to 40

 7   minutes because there is a lot of information I am going to

 8   need to share with you and ask that you understand.

 9           I think you know this but just in the abundance of

10   caution, if you have any questions, concerns at all, let me

11   know, we'll stop the proceeding and try to address your

12   concerns.

13           All right, sir?

14           THE DEFENDANT:  Yes, sir.  Thank you.

15           THE COURT:  All right.  And at this time I am

16   going to ask you to raise your right hand so that we can

17   administer the oath.

18           THE CLERK:  You do solemnly swear that you will

19   make true answers to such questions that the Court will ask

20   you regarding your change of plea, so help you God?

21           THE DEFENDANT:  Yes, I do, so help me God.

22           THE COURT:  All right.  Mr. Harrell, you can place

23   your right hand down.

24           You have now been placed under oath; so if you

25   answer any of my questions falsely, those answers can be
```

1    used in another prosecution for perjury or for making a

2    false statement.

3              Do you understand that, sir?

4              THE DEFENDANT:  Yes, sir, I do.

5              THE COURT:  And do you understand that you have

6    the right to remain silent and not answer any of my

7    questions?

8              THE DEFENDANT:  Yes, sir, I do.

9              THE COURT:  Do you give up that right in order to

10   plead guilty today?

11             THE DEFENDANT:  Yes, sir, I do.

12             THE COURT:  Does counsel join?

13             MS. SAVO:  Yes.

14             THE COURT:  All right.  So, Mr. Harrell, let me

15   ask you how old are you, sir?

16             THE DEFENDANT:  Currently 27 years old, sir.

17             THE COURT:  How many years of school have you

18   completed?

19             THE DEFENDANT:  Completed high school as well as

20   some college curriculum courses, sir.

21             THE COURT:  Have you been treated recently for any

22   mental illness or addiction to narcotics of any kind?

23             THE DEFENDANT:  Mental illness, yes, sir.  No

24   narcotics at this time.

25             THE COURT:  Again, I don't mean -- it's not my

1    intention to pry, but I need to ask these questions.

2            So tell me about the treatment for mental illness,

3    how long ago was it, have you been prescribed any medication

4    to deal with it.  Can you talk to me a little bit about

5    that, sir.

6            THE DEFENDANT:  Yes, sir.  I am currently I am

7    going to battle with anxiety, depression, PTSD, as well as

8    emotional burdens, and I have been medicating for the last

9    four years in response to psychiatric evaluations as well as

10   psychological evaluations as well as a treatment on a new

11   medication in regards to suicide.

12           THE COURT:  And can you tell me specifically what

13   the medications are that you are taking right now.

14           THE DEFENDANT:  I cannot, sir.  I do not have the

15   complete list.  It is extensive as well as it is varied.

16   This has been an ongoing treatment for the past couple

17   years, and my medications have been cycled on and off, and

18   at this location we are not readily given our prescription,

19   sir.

20           THE COURT:  Okay.  Is there -- when was the last

21   time you took your medication?

22           THE DEFENDANT:  Last night, sir, at around 9:30,

23   9:45 P.M.

24           THE COURT:  And is there anything about the

25   medications that you take or have taken in the past that

1   might impact your ability to understand what's happening

2   here today or your ability to make decisions with respect to

3   what you are doing this morning?

4            THE DEFENDANT:  No, sir, I do not believe that.

5            THE COURT:  And do you believe that you suffer

6   from any mental condition or disability that would prevent

7   you from understanding what's happening here today,

8   including understanding the charges against you and the

9   consequences to you of this guilty plea?

10            THE DEFENDANT:  I do understand, and I do not

11   believe any of those will impact my cognitive ability today,

12   sir.

13            THE COURT:  Is there any reason in your mind, sir,

14   why we should not go forward today?

15            THE DEFENDANT:  No, sir, I have nothing to offer

16   in that regard.

17            THE COURT:  Ms. Savo, have you talked to

18   Mr. Harrell about these proceedings?

19            MS. SAVO:  I have, Your Honor.  And subsequent to

20   our last status conference, I did have Ms. Barrow from my

21   office who is a PsyD speak with him, and then I subsequently

22   saw him myself, and I believe that at this time he is

23   capable of going forward.

24            THE COURT:  Do you believe that he is in

25   possession of his faculties and is competent to proceed?

```
 1                MS. SAVO:  Yes.

 2                THE COURT:  Based on the statements of Mr. Harrell

 3     and his counsel, I find the defendant in full possession of

 4     his faculties and competent to proceed.

 5                Now, Mr. Harrell, again if -- there are questions

 6     that I need to ask that I think we all know the answer to,

 7     but I just want to ensure for the record these facts.

 8                Have you received a copy of the Indictment, the

 9     written document that lays out the charges against you?

10                THE DEFENDANT:  Yes, sir, I have.

11                THE COURT:  Now, you have the right to have me

12     read the Indictment from beginning to end here in court.

13                Do you want me to read it to you at this time?

14                THE DEFENDANT:  No, sir.  I understand the content

15     of it.

16                THE COURT:  All right.  Now you have the following

17     constitutional rights that you will be giving up if you

18     plead guilty.

19                You have the right to plead not guilty, obviously,

20     and persist in that plea.

21                You have a right to a speedy and public trial.  At

22     that -- and you also have the right to trial by jury.  At

23     that trial, it's the government's burden to prove each and

24     every element of the offense beyond a reasonable doubt.

25                If you and the government agree, you could have
```

```
 1    the case tried by the Court.  I would hear the evidence, and
 2    I would decide whether or not the government has proved its
 3    case.
 4              You have the right to have an assistance of a
 5    lawyer like you have right now.  And if you couldn't afford
 6    a lawyer, one would be appointed for you free of charge.
 7              At a trial, you would have the right to see and
 8    hear the witnesses testify against you and have your lawyer
 9    question those witnesses.  You could have witnesses
10    subpoenaed and compelled to come testify on your behalf.
11              You could testify on your own behalf.  But you
12    also have what is known as the privilege against
13    self-incrimination, which means that you have the absolute
14    right not to testify at a trial.  And if we went to trial
15    and you did not testify, the fact that you did not testify
16    could not be used against you.
17              Lastly, you have the a right to appeal your
18    conviction and sentence if you went to trial and were
19    convicted.
20              Have you and Ms. Savo talked about all of those
21    rights?
22              THE DEFENDANT:  Yes, sir, we have.
23              THE COURT:  And do you understand all of those
24    rights?
25              THE DEFENDANT:  Yes, sir, I do.
```

1          THE COURT:  Do you have any questions of me about

2     any of those rights, sir?

3          THE DEFENDANT:  Currently, no, sir.

4          THE COURT:  Now, if I accept the plea today, you

5     are going to be incriminating yourself because you are going

6     to be admitting to a crime and you will have waived or given

7     up the right to a trial and all of the other rights that I

8     just described.

9          Do you understand that, sir?

10         THE DEFENDANT:  Yes, sir, I do.

11         THE COURT:  And do you give up all those rights in

12     order to plead guilty today?

13         THE DEFENDANT:  I do, sir.

14         THE COURT:  Ms. Savo, are you satisfied that the

15     waivers are knowingly, voluntarily, and intelligently made?

16         MS. SAVO:  I am.

17         THE COURT:  And do you join and concur in the

18     waivers?

19         MS. SAVO:  I do.

20         THE COURT:  Okay.  So, Mr. Harrell, there is a

21     number of counts here.

22         And, Ms. Myers, please, I know you are checking,

23     but I just want to make sure I have gotten all the charges

24     here.

25         So Count 1 charges you with child exploitation

1    enterprise, in violation of Title 18 United States Code

2    Section 2252A(g).

3          Count 2 charges you with obtaining custody of a

4    child to produce child pornography, in violation of

5    Title 18 United States Code Section 2251A(b).

6          Counts 3 through 5 charge you with production of

7    child pornography, in violation of Title 18 United States

8    Code Sections 2251(a), (e), as well as the theory of aiding

9    and abetting the production of child pornography, in

10   violation of Title 18 United States Code Section 2(a).

11         Counts 7 through 23 charge you with production of

12   child pornography, in violation of Title 18 United States

13   Code Sections 2251(a), (e).

14         And then Count 24 charges you with possession of

15   child pornography, in violation of Title 18 United States

16   Code Section 2252(a)(4)(B) and 2252(b)(2).

17         Ms. Myers, have I covered all the charges in which

18   Mr. Harrell is pleading guilty to?

19         MS. MYERS:  Yes, Your Honor.

20         THE COURT:  So, Mr. Harrell, I am going to ask you

21   to listen carefully because the prosecution is going to

22   outline the elements of each of those charges.  All right?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  All right.

25         Ms. Myers, please.

1          MS. MYERS:  For the defendant to be guilty of the

2   crime charged in Count 1, that is, child exploitation

3   enterprise, in violation of Title 18 United States Code

4   Section 2252A(g), the following must be true:

5          One, defendant knowingly produced, advertised,

6   transported, distributed, or received child pornography, in

7   violation of Chapter 10 Title -- sorry, Chapter 110 of

8   Title 18 United States Code as part of a series of felony

9   violations constituting three or more separate incidents;

10          Two, the incidents involved more than one victim;

11          And, three, the defendant committed those offenses

12   in concert with three or more other persons.

13          For defendant to be guilty of the crime charged in

14   Count 2, that is, obtaining custody of a child to produce

15   child pornography, in violation of Title 18 United States

16   Code Section 2251A(b), the following must be true:

17          One, defendant purchased or otherwise obtained

18   custody or control of a minor or otherwise offered to

19   purchase or otherwise obtained custody or control of a

20   minor;

21          Two, defendant, A, knew that as a consequence of

22   the purchase or obtaining of custody, the minor would be

23   portrayed in a visual depiction engaging in or assisting

24   another person to engage in sexually explicit conduct; or B,

25   defendant intended to promote either the engaging in of

1  sexually explicit conduct by such minor for the purpose of

2  producing any such visual depiction or the rendering of

3  assistance by the minor to any other person to engage in

4  sexually explicit conduct for the purpose of producing any

5  visual depiction of such conduct;

6  And, 3A, the minor or defendant traveled or was

7  transported in or affecting interstate or foreign commerce;

8  3B, the offer was communicated or transported

9  using any means or facility of interstate or foreign

10  commerce in or affecting interstate or foreign commerce by

11  any means including by computer or using the mail;

12  Or, 3C, the conduct took place in any territory or

13  possession of the United States.

14  For defendant to be guilty of the crime charged in

15  Counts 3, 4, 5, and 7 through 23, that is, production of

16  child pornography, in violation of Title 18 United States

17  Code Sections 2251(a) and (e), the following must be true:

18  One, at the time of the offense the victim was

19  under the age of 18 years;

20  Two, defendant employed, used, persuaded, induced,

21  enticed, or coerced the victim to take part in sexually

22  explicit conduct for the purpose of producing a visual

23  depiction of such conduct;

24  And, 3A, the visual depiction was actually

25  transported and transmitted using any means or facility of

1    interstate and foreign commerce and in or affecting

2    interstate commerce;

3             Or, B, the defendant knew or had reason to know

4    that the visual depiction would be transported or

5    transmitted using any means or facility of interstate or

6    foreign commerce or in or affecting interstate commerce;

7             Or, 3C, the visual depiction was produced or

8    transmitted using materials that had been mailed, shipped,

9    or transported in or affecting interstate or foreign

10   commerce by any means, including by computer.

11            For defendant to be guilty of aiding and abetting

12   the production of child pornography, as charged as an

13   alternative theory in Counts 3, 4, and 5, in violation of

14   Title 18 United States Code 2251(a), the following must be

15   true:

16            One, someone else committed the production of

17   child pornography;

18            Two, defendant aided, counseled, commanded,

19   induced or procured that person with respect to at least one

20   element of the production of child pornography;

21            Three, defendant acted with the intent to

22   facilitate the production of child pornography;

23            And, four, defendant acted before the crime was

24   completed.

25            For defendant to be guilty of the crime charged in

```
 1   Count 24, that is, possession of child pornography, in
 2   violation of Title 18 United States Code
 3   Section 2252(a)(4)(B) and (b)(2), the following must be
 4   true:
 5          One, defendant knowingly possessed one or more
 6   matter that defendant knew contained the visual depictions
 7   of minors engaged in sexually explicit conduct;
 8          Two, defendant knew that the visual depictions
 9   showed minors engaged in sexually explicit conduct;
10          Three, defendant knew that the production of such
11   visual depictions involved use of a minor in sexually
12   explicit conduct;
13          And, four, the visual depiction had been either:
14   A, transported using any means or facility of interstate
15   commerce or in or affecting interstate commerce; or, B,
16   produced using materials that had been transported using any
17   means or facility of interstate commerce or in affecting
18   interstate or foreign commerce by computer or other means.
19          THE COURT:  Mr. Harrell, did you understand
20   everything that the government just stated with respect to
21   the charges to which you are pleading guilty to and the
22   elements of those charges?
23          THE DEFENDANT:  Yes, sir.
24          THE COURT:  Have you and Ms. Savo talked about the
25   maximum and any mandatory minimum penalties that apply to
```

```
 1   this case?

 2              THE DEFENDANT:  Yes, sir, we have.

 3              THE COURT:  And, sir, I am going to ask you to

 4   listen again carefully because Ms. Myers is going to outline

 5   those penalties for the record.

 6              Ms. Myers.

 7              MS. MYERS:  The statutory maximum sentence that

 8   the Court can impose for a violation of Title 18 United

 9   States Code Section 2252A(g) is life imprisonment, a

10   lifetime period of supervised release, full restitution to

11   the victims of the offense, a fine of $250,000 or twice the

12   gross gain or gross loss resulting from the offense

13   whichever is greatest, and a mandatory special assessment of

14   $100, and a $5,000 special assessment pursuant to

15   Title 18 United States Code Section 3014 if the Court

16   determines the defendant is not indigent.

17              The statutory maximum sentence that the Court can

18   impose for violation of Title 18 United States Code

19   Section 2251A(b) is life imprisonment, a lifetime period of

20   supervised release, full restitution of the victims of the

21   offense, a fine of $250,000 or twice the gross gain or gross

22   loss resulting from the offense, whichever is greatest, a

23   mandatory special assessment of $100 and a $5,000 special

24   assessment pursuant to Title 18 United States Code Section

25   3014 if the Court determines defendant is non-indigent.
```

1          The statutory maximum sentence that the Court can

2    impose for each violation of Title 18 United States Code

3    Section 2251(a) and (e) is 30 years imprisonment, a lifetime

4    period of supervised release, full restitution to the

5    victims of the offense, a fine of $250,000 or twice the

6    gross gain or gross loss resulting from the offense

7    whichever is greatest, a mandatory special assessment of

8    $100, and a $5,000 special assessment pursuant to

9    Title 18 United States Code Section 3014 if the Court

10   determines defendant is non-indigent.

11         The statutory maximum sentence that the Court can

12   impose for violation of Title 18 United States Code

13   Section 2252(a)(4)(B) and (b)(2) is 20 years imprisonment, a

14   lifetime period of supervised release, full restitution to

15   the victims of the offense, fine of $250,000 or twice the

16   gross gain or gross loss resulting from the offense

17   whichever is greatest, and a mandatory special assessment of

18   $100, and a $5,000 special assessment pursuant to

19   Title 18 United States Code Section 3014 if the Court

20   determines that the defendant is non-indigent.

21         The total maximum sentence for all offenses to

22   which defendant is pleading guilty is lifetime imprisonment,

23   a lifetime period of supervised release, a fine of

24   $5,750,000 or twice the gross gain or gross loss resulting

25   from the offenses whichever is greatest, a mandatory special

1  assessment of $2,300, and a trafficking special assessment

2  of $115,000 if the Court determines that the defendant is

3  non-indigent.

4        The statutory minimum sentence that the Court must

5  impose for a violation of Title 18 United States Code

6  2252A(g) is 20 years imprisonment, five years supervised

7  release, and mandatory special assessment of $100.

8        The statutory minimum sentence that the Court must

9  impose for a violation of Title 18 United States Code

10  Section 2251A(b) is 30 years imprisonment, five years

11  supervised release, and mandatory special assessment of

12  $100.

13        The statutory minimum sentence that the Court must

14  impose for a violation of Title 18 United States Code

15  Section 2251(a) is 15 years imprisonment, five years

16  supervised release, and mandatory special assessment of

17  $100.

18        The statutory minimum sentence that the Court must

19  impose for a violation of Title 18 United States Code

20  Section 2252(a)(4)(B) is five years supervised release and a

21  mandatory special assessment of $100.

22        Do you want me to read about supervised release,

23  Your Honor?

24        THE COURT:  Yes, please.

25        MS. MYERS:  Supervised release is a period of time

1  following imprisonment during which defendant will be

2  subject to various restrictions and requirements.  If

3  defendant violates one or more of the conditions of any

4  supervised release imposed, defendant may be returned to

5  prison for all or part of the term of supervised release

6  authorized by statute for the offense that resulted in the

7  term of supervised release.

8          By pleading guilty, defendant may be giving up

9  valuable government rights, government benefits, and

10  valuable civic rights such as the right to vote, right to

11  possess a firearm, the right to hold office, and the right

12  to serve on a jury.

13          Once the Court accepts defendant's guilty plea, it

14  will be a federal felony for defendant to possess a firearm

15  or ammunition.

16          Convictions in this case may also subject

17  defendant to various other collateral consequences including

18  but not limited to revocation of probation, parole, or

19  supervised release in another case, and suspension or

20  revocation of a professional license.

21          There are unanticipated collateral consequences

22  that will not serve as grounds to withdraw defendant's

23  guilty plea.

24          If defendant is not a United States citizen, the

25  convictions in this case make it practically inevitable and

1  a virtual certainty that defendant will be removed or

2  deported from the United States.  Defendant may also be

3  denied United States citizenship and admission to the

4  United States in the future.

5          While there may be arguments that defendant can

6  raise in immigration proceedings to avoid or delay removal,

7  removal is presumptively mandatory and virtual certainty

8  here.  Removal and immigration consequences are the subject

9  of a separate proceeding and no one including defendant's

10  attorney or the Court can predict to an absolute certainty

11  the effects of his convictions on his immigration status.

12          Defendant nevertheless wants to plead guilty

13  regardless of any immigration consequences that his pleas

14  may entail even if the consequence is automatic removal from

15  the United States.

16          As a condition of supervised release under

17  Title 18 United States Code Section 3583(d), defendant will

18  be required to register as a sex offender.  Independent of

19  supervised release, defendant will be subject to federal and

20  state registration requirements for a possible maximum term

21  of registration up to and including life.  Under Title 18

22  United States Code Section 4042(c) notice will be provided

23  to certain law enforcement agencies upon defendant's release

24  from confinement following conviction.

25          Defendant must register and keep the registration

1    current in each jurisdiction in which the defendant resides,

2    is an employee or is a student.  Requirements for

3    registration include providing, among other information,

4    defendant's true name, residence address, names and

5    addresses of any places where the defendant is or will be an

6    employee or student.

7           The requirement to keep the registration current,

8    including informing at least one jurisdiction in which the

9    defendant resides, is an employee, or is a student not later

10   than three business days after any change of the defendant's

11   name, residence, employment, or student status.  Failure to

12   comply with these obligations subjects the defendant to

13   prosecution for failure to register under federal law,

14   Title 18 United States Code Section 2250, which is

15   punishable by a fine or imprisonment or both.

16          THE COURT:  Thank you, Ms. Myers.

17          Mr. Harrell, I know there was a lot of information

18   that was just articulated, but did you -- A, did you

19   understand it; and, B, did you go over all of that

20   information with Ms. Savo before today?

21          THE DEFENDANT:  Yes to A and B, sir.

22          THE COURT:  All right.  So, sir, you know -- do

23   you understand you are not eligible for a probationary

24   sentence in this case?  Do you understand that?

25          THE DEFENDANT:  I do, sir.

```
 1              THE COURT:  As Ms. Myers indicated, do you
 2   understand, as a condition of your supervised release, you
 3   are going to be required to register as a sex offender?  Do
 4   you understand that, sir?
 5              THE DEFENDANT:  Yes, sir, I do.
 6              THE COURT:  All right.  And if you live, work, or
 7   go to school in California, you are subject to the
 8   registration requirements of California Penal Code
 9   Section 290.  Do you understand that, sir?
10              THE DEFENDANT:  Yes, sir, I do.
11              THE COURT:  If you are on probation or parole on
12   any other case, this plea could result in a violation or
13   revocation of that parole or probation and you could be
14   sentenced to prison on that other case.  Do you understand
15   that, sir?
16              THE DEFENDANT:  Yes, sir, I do.
17              THE COURT:  As mentioned earlier, you understand
18   that you must pay full restitution to the victims in this
19   case?  Do you understand that?
20              THE DEFENDANT:  Yes, sir, I do.
21              THE COURT:  Do you have any questions of me
22   regarding the potential sentence that you may receive if the
23   Court accepts your guilty plea?
24              THE DEFENDANT:  No, sir, not at this time.
25              THE COURT:  And have you discussed the possible
```

```
 1   punishment, the facts of your case, and possible defenses
 2   with Ms. Savo?
 3               THE DEFENDANT:  Yes, sir, I have.
 4               THE COURT:  Have you understood everything that
 5   we've talked about this morning, sir?
 6               THE DEFENDANT:  Yes, sir.  I understand.
 7               THE COURT:  All right.  Now, sir, you are going to
 8   be sentenced under what's known as the Sentencing Reform Act
 9   of 1984.  An organization out of Washington, D.C. called the
10   United States Sentencing Commission, they've issued
11   guidelines that judges must consult and take into account
12   but are not required to follow in determining a sentence in
13   a criminal case.
14               I will be looking at the guidelines as well as any
15   other factors under Title 18 United States Code Section
16   3553(a) -- your background, your personal circumstances,
17   your history, if you will.
18               Have you and Ms. Savo talked about how the
19   sentencing guidelines might be applied in this case?
20               THE DEFENDANT:  Yes, sir, we have.
21               THE COURT:  Now, regardless of the guideline
22   range, I could sentence you to up to the maximum that's
23   allowed by law.  Do you understand that, sir?
24               THE DEFENDANT:  Yes, sir, I do.
25               THE COURT:  A presentence report will be prepared
```

1    in this case.  You are going to have the opportunity to

2    review it, along with Ms. Savo, and so will the government.

3    Both sides can file any objections that you might have to

4    that report, and both sides will be able to file papers to

5    the Court indicating what you believe the appropriate

6    sentence should be.  Do you understand that, sir?

7              THE DEFENDANT:  Yes, sir, I do.

8              THE COURT:  Now the sentence that I impose, it

9    could be greater than what your lawyer recommends.  It could

10   be less than what your lawyer recommends.  It could be

11   greater than what the government recommends or less than

12   what the government recommends.  Do you understand that,

13   sir?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  And the fact that you may be

16   disappointed with the sentence, that alone would not be a

17   reason -- well, you would not be able to withdraw your plea

18   just because you are dissatisfied with the sentence.  Do you

19   understand that, sir?

20             THE DEFENDANT:  Yes, sir, I do.

21             THE COURT:  Now, has anyone made any promises,

22   representations, or guarantees of any kind in an effort to

23   get you to plead guilty today?

24             THE DEFENDANT:  No, sir, they have not.

25             THE COURT:  Has anyone attempted to threaten you,

 1   family member, or anyone close to you in an effort to get
 2   you to plead guilty today?
 3          THE DEFENDANT:  No, sir.
 4          THE COURT:  Has anyone told you that you will get
 5   a specific sentence if you plead guilty today?
 6          THE DEFENDANT:  No, sir.
 7          THE COURT:  Are you pleading guilty voluntarily
 8   and of your own free will?
 9          THE DEFENDANT:  Yes, I am, sir.
10          THE COURT:  Ms. Savo, did you review the facts of
11   the case and all the discovery provided by the government
12   with Mr. Harrell?
13          MS. SAVO:  Yes.
14          THE COURT:  Did you pursue with him any potential
15   defenses that he might have?
16          MS. SAVO:  Yes, I did.
17          THE COURT:  Have you advised him concerning the
18   legality or admissibility of any of the statements or
19   confessions or any other evidence that the government has
20   against him?
21          MS. SAVO:  Yes.
22          THE COURT:  To the best of your knowledge, is your
23   client pleading guilty because of any illegally obtained
24   evidence in the possession of the government?
25          MS. SAVO:  Not to my knowledge.

```
 1              THE COURT:  Did you and Mr. Harrell agree that it
 2   was in his best interests to enter into this plea?
 3              MS. SAVO:  Yes.
 4              THE COURT:  Is it your opinion that Mr. Harrell is
 5   entering this plea freely and voluntarily with a full
 6   knowledge of the charges and the consequences to him of the
 7   plea?
 8              MS. SAVO:  Yes.
 9              THE COURT:  Have there been any promises,
10   representations, or guarantees made to either you or
11   Mr. Harrell in connection with this plea?
12              MS. SAVO:  No.
13              THE COURT:  Other than a general discussion of the
14   guidelines, have you given Mr. Harrell any indication of a
15   specific sentence that this Court would impose in this case?
16              MS. SAVO:  No, I have not.
17              THE COURT:  Do you join in the waiver of jury
18   trial and concur in the plea?
19              MS. SAVO:  Yes.
20              THE COURT:  Ms. Myers, has the government made any
21   promises, representations, or guarantees to either
22   Mr. Harrell or Ms. Savo?
23              MS. MYERS:  No, Your Honor.
24              THE COURT:  Does the government waive jury trial?
25              MS. MYERS:  Yes, Your Honor.
```

```
 1                    THE COURT:  Mr. Harrell, back to you, sir.
 2                    Are you satisfied with the work that your lawyer
 3      has done for you on the case?
 4                    THE DEFENDANT:  Yes, sir, I am.
 5                    THE COURT:  Have you told her everything that you
 6      know about the case?
 7                    THE DEFENDANT:  Yes, sir, I have.
 8                    THE COURT:  Do you believe that she's fully
 9      considered any defenses that you might have?
10                    THE DEFENDANT:  I do, sir.
11                    THE COURT:  Have you had enough time to talk with
12      her about the case?
13                    THE DEFENDANT:  Yes, sir.
14                    THE COURT:  Do you believe you understand the
15      consequences to you of this plea?
16                    THE DEFENDANT:  Yes, sir, I do.
17                    THE COURT:  Now, do you understand, sir, that, if
18      I accept the plea today, all that will be left in the case
19      is your sentence which will include prison time.  Do you
20      understand that?
21                    THE DEFENDANT:  Yes, sir, I do.
22                    THE COURT:  Having in mind everything that we've
23      talked about this morning -- the rights that you will be
24      giving up, the maximum sentence, the mandatory minimum
25      sentence in these cases -- and these counts, I should say,
```

1    do you still want to plead guilty, sir?

2              THE DEFENDANT:  Yes, sir, I do.

3              THE COURT:  Now at this point, sir, I am going to

4    ask you to listen carefully because the government is going

5    to outline what it believes it will be able to prove at

6    trial, and then I am going to ask you some questions about

7    that.

8              MS. SAVO:  Your Honor, may I make a suggestion, if

9    it's all right.

10             THE COURT:  Go ahead.

11             MS. SAVO:  Because there is so much overlap

12   between the two versions of the factual basis, I'd like to

13   propose that the Court allow me to read the defense version

14   and then ask the government to supplement.  Otherwise, if

15   Ms. Myers reads her version, then I would be rereading most

16   of it.  I just think there is potential for increased

17   confusion rather than less confusion.

18             THE COURT:  Okay.  Go ahead, Ms. Savo, go ahead,

19   you read yours first.

20             MS. SAVO:  As to Count 1, Mr. Harrell, also known

21   as Soole, Fritters, Kronos, and The Dread King, was a member

22   of Website A, which was an Internet-based, members-only

23   bulletin board dedicated to the production, advertisement,

24   transportation, receipt, distribution, and possession of

25   child pornography depicting children five years old or

 1 younger.

 2          Mr. Harrell admits that he was a member of

 3 Website A and that he made posts under the name Soole.  When

 4 Mr. Harrell was a member, Website A had over 1,000 members.

 5 Its members used screen names to mask their identities,

 6 followed security rules regarding remaining anonymous, and

 7 needed to use a network that masked each member's Internet

 8 protocol address.

 9          Members could make posts to Website A that often

10 included child pornography images and videos and links to

11 child pornography.  Members could make these posts in

12 different sections of Website A that were dedicated to child

13 pornography depicting children of certain ages and genders.

14          Website A also allowed members to ascend to

15 certain ranks based on the extent of that member's

16 participation in Website A, including the amount of child

17 pornography the member shared over the Website.

18          Mr. Harrell joined Website A on approximately

19 February 12th, 2016, and made approximately 155 posts to

20 other Website A users.  For example, acting in concert with

21 co-defendant Brinson and other members of Website A,

22 Mr. Harrell made posts on Website A on November 3rd, 2016,

23 of Minor 14; January 12th, 2017, of Minor 5; and

24 April 15, 2017, of Minor 6; each of which constituted visual

25 depictions of child pornography, the production of which

1    involved the use of the minor engaging in sexually explicit

2    conduct.

3              Defendant Harrell knowingly posted and advertised

4    said visual depictions seeking and offering to receive in

5    exchange other visual depictions of minors engaged in

6    sexually explicit conduct.  Mr. Harrell posted said visual

7    depictions on Website A using his computer, a means and

8    facility of interstate commerce, and in and affecting

9    interstate commerce.

10             As to Count 2, on or about September 24th, 2016,

11   Mr. Harrell took custody and control of Minor Victim 11 and

12   transported him to Co-defendant Brinson's residence for the

13   purpose of producing child pornography.  While in

14   Mr. Harrell's custody, Mr. Harrell and Brinson created

15   images of Minor Victim 11 which constituted visual

16   depictions of Minor 11 engaged in sexually explicit conduct.

17   Mr. Harrell's offer to obtain custody of Minor 11 was

18   communicated using a cellular telephone network, that is, a

19   means or facility of interstate commerce.

20             As to Counts 3 through 5, between approximately

21   September 24th, 2016, and May 28th, 2017, Mr. Harrell and

22   Co-defendant Brinson, each assisting the other, created

23   images and/or videos of Minor Victims 3, 11, and 12, which

24   depicted lascivious displays of the genitals of those minors

25   or those minors engaged in sexually explicit conduct.  Each

1    image or video was produced or transmitted using materials

2    that were manufactured outside of California.

3              As to Counts 7 through 20, between

4    approximately 2013 and May 28, 2017, Mr. Harrell created

5    images and/or videos of Minor Victims 5, 6, 7, 8, 9, 10, 13,

6    14, 15, 16, 17, 18, 19, and 20, each of which depicted the

7    lascivious display of the genitals of those minors or those

8    minors engaged in sexually explicit conduct.  Each image or

9    video was produced or transmitted using materials that were

10   manufactured outside of California.

11             As to Counts 21 through 23, on approximately

12   May 19th, 2017, Mr. Harrell created images and/or videos of

13   Minor Victims 21, 22, and 23, which depicted the lascivious

14   display of the genitals of each of those minors.  Each image

15   or video was produced or transmitted using materials that

16   were manufactured outside of California.

17             As to Count 24, on approximately May 28th, 2017,

18   Mr. Harrell possessed at least one electronic device that

19   contained images and videos of minors including minors who

20   were under 12 years old who are not Minor Victims 3 or 5

21   through 23, that depict the lascivious display of the

22   minors' genitals.  These images were produced using

23   materials that had been transported across a state line into

24   California and/or had been transmitted via the Internet,

25   that is, a means or facility of interstate commerce.

1          All of Mr. Harrell's offenses described above took

2     place in whole or in part within the Central District of

3     California.  He took these actions knowingly and

4     deliberately and not by mistake or accident.

5          THE COURT:  Thank you, Ms. Savo.  Let me just ask

6     a couple of questions before we shift over to Ms. Myers.

7          Mr. Harrell, did you understand everything that

8     your lawyer said about the facts that you are pleading

9     guilty to and admitting today?

10         THE DEFENDANT:  Yes, sir, I did.

11         THE COURT:  Is everything that Ms. Savo said about

12    you and your conduct and intent, is that all true and

13    correct?

14         THE DEFENDANT:  Yes, sir, it is.

15         THE COURT:  And are you pleading guilty because

16    you did the things charged in the counts in the Indictment

17    that you are pleading guilty to?

18         THE DEFENDANT:  Yes, sir, I am.

19         THE COURT:  And are you pleading guilty, sir,

20    because you are in fact guilty?

21         THE DEFENDANT:  Yes, sir, I am.

22         THE COURT:  Now, at this time I want you to listen

23    carefully to what the government is going to state because

24    they're going to outline what -- they are going to

25    supplement what has been discussed with what they believe

 1   they will be able to prove at trial.  So listen carefully,

 2   sir.  All right?

 3           Ms. Myers.

 4           MS. MYERS:  Yes, Your Honor.

 5           I have a redline here.  So I was going just going

 6   to read from the redline the facts that the government would

 7   add.  Do you think that would be clear enough?

 8           THE COURT:  That's fine.

 9           MS. MYERS:  Okay.  And I would also ask the Court

10   to confirm with defendant and defense counsel that they've

11   received the list that identifies each minor victim by their

12   name.

13           THE COURT:  All right.  We'll deal with that at

14   the end.  Go ahead.

15           MS. MYERS:  Yes, Your Honor.

16           As connected to Count 1, on November 3rd, 2016,

17   Harrell made a post that contained a preview image

18   portraying smaller images including images that depicted a

19   close-up of Minor Victim 14's unclothed legs spread to show

20   her genitals in the middle of the image.  The post also

21   included a link to the preview image and a link to download

22   the full-sized version of the smaller images along with

23   texts about the images.  Minor Victim 14 was approximately

24   five years old at the time of the post.

25           Also connected to Count 1, the government, if this

1  case were to proceed to trial, the government would prove

2  the following beyond a reasonable doubt:  On January

3  12th, 2017, Harrell made a post that contained a preview

4  image portraying smaller images including images that

5  depicted a close-up of Minor Victim 5's unclothed genitals

6  spread by Harrell's fingers.  The post also included a link

7  for the preview image and a link to download full-sized

8  versions of the smaller images along with texts about the

9  images and the statement that there would be more.  Minor

10  Victim 5 was less than two years old at the time of the

11  post.

12          Also connected to Count 1, if this case were to

13  proceed to trial, the government prove the following facts

14  beyond a reasonable doubt:  That on April 15th, 2017,

15  Harrell made a post that included links to two image

16  previews of video files and links to the two video files as

17  well as texts describing the videos.  One of the videos

18  depicted Minor Victim 6 being anally penetrated by Harrell's

19  penis.  Minor Victim 6 was less than three years old at the

20  time of the post.

21          As to Count 2, if the case were to proceed to

22  trial, the government would prove the following additional

23  facts beyond a reasonable doubt:  That while in

24  Defendant Harrell's custody, Harrell and Brinson created

25  images of Minor Victim 11 which depicted the lascivious

exhibition of Minor Victim 11's genitals and images that
depicted adult fingers touching Minor Victim 11's penis and
anus.

As to Counts 3 through 5, the government would
prove the following facts beyond a reasonable doubt if the
case were to proceed to trial:  Between approximately
September 24th, 2016, and May 28, 2017, Harrell and Brinson
each assisting the other created images or videos of Minor
Victims 3, 11, and 12 which depicted lascivious displays of
the genitals of Minor Victims 3, 11, and 12, as well as
Harrell and/or Brinson orally copulating, masturbating, or
anally penetrating Minor Victims 3, 11, and 12.  At all the
relevant times Minor Victim 3 was less than eight years old,
and Minor Victim 12 was less than four years old.

As to Counts 7 through 20, if the case were to
proceed to trial, the government would prove the following
facts beyond a reasonable doubt:  Between approximately 2013
and May 28, 2017, Harrell created images and/or videos of
Minor Victims 5, 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 18, 19,
and 20, each of which depicted the lascivious displays of
the genitals of those minors or depicted Harrell orally
copulating, masturbating, or anally penetrating those
minors.  Each image or video was produced or transmitted
using materials manufactured outside of California.  At all
relevant times Minor Victims 5, 6, 7, 8, 9, 10, 13, 14, 15,

```
 1    16, 17, 18, 19, and 20 were less than ten years old.
 2             As to Counts 21 through 23, the government would
 3    prove the additional facts that at all relevant time Minor
 4    Victims 21, 22, and 23 were less than seven years old.
 5             Those are the additional facts that the government
 6    would introduce, among others, beyond a reasonable doubt if
 7    the case were to proceed to trial.
 8             THE COURT:  All right.
 9             Mr. Harrell, did you understand everything that
10    the government said about what it believes it would prove if
11    the case were to go to trial?  Did you understand what she
12    said, sir?
13             THE DEFENDANT:  Yes, sir.
14             THE COURT:  Okay.  Now, I am going to ask Ms. Savo
15    first.
16             Ms. Savo, did you receive a list that outlines the
17    names of the minor victims that have not been identified
18    publicly here in court?
19             MS. SAVO:  Yes.
20             THE COURT:  Did you go over that list with
21    Mr. Harrell?
22             MS. SAVO:  Yes.
23             THE COURT:  Mr. Harrell, just want to confirm.
24    Did you receive -- did you go over the list of names that
25    have been referenced in this morning as minor victims,
```

```
 1    et cetera, throughout the course of this proceeding?

 2              THE DEFENDANT:  Yes, sir.

 3              THE COURT:  And you understand who each of those

 4    victims are by name.  Correct?

 5              THE DEFENDANT:  Yes, sir.

 6              THE COURT:  All right.  So let me ask.

 7              Is the government satisfied with the factual basis

 8    at this time?

 9              MS. MYERS:  Yes, Your Honor.

10              THE COURT:  Do counsel agree that the Court has

11    complied with the requirements of Rule 11?

12              Ms. Myers?

13              MS. MYERS:  Yes, Your Honor.  And just to confirm,

14    that defendant understands that each of the minor victims

15    was under 18.

16              THE COURT:  All right.  I believe that's been

17    stated but just in an abundance of caution, Mr. Harrell, do

18    you understand that each of the minor victims that have been

19    named -- or discussed this morning were under the age of 18?

20    Do you understand that?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  All right.

23              Anything else, Ms. Myers?

24              MS. MYERS:  No, Your Honor.

25              THE COURT:  Ms. Savo, do you agree that the
```

1    Court's complied with the requirements of Rule 11?

2              MS. SAVO:  Yes.

3              THE COURT:  So, Mr. Harrell, in case 17-404, how

4    do you plead to Counts 1 through 5 and 7 through 24?

5              THE DEFENDANT:  Guilty, Your Honor.

6              THE COURT:  So, sir, I am going to make certain

7    findings.  Again, if you don't understand what I am saying

8    or have any questions about what I'm saying, please let me

9    know.  We'll stop the proceedings to try to address those

10   issues.

11             In the case of United States versus Arlan Wesley

12   Harrell, the Court having questioned Mr. Harrell on -- and

13   his counsel on the offer to plead guilty to Counts 1 through

14   5 and 7 through 24 of the Indictment, all of which are

15   felonies, Mr. Harrell and his counsel advised the Court that

16   they've conferred concerning the offered pleas and all

17   aspects of the charges against Mr. Harrell and any defenses

18   that he may have and the Court having observed Mr. Harrell's

19   intelligence, his demeanor, and attitude while answering the

20   questions, and the Court having observed that he does not

21   appear to be under the influence of any medicine, drug, or

22   other substance or factor that might affect his actions or

23   judgment in any manner; so I find that he is fully competent

24   and capable of entering the plea, he is aware of the nature

25   of the charges and the consequences of the plea and that the

```
1   plea is knowingly, voluntarily, and intelligently made with
2   a full understanding of the nature of the charges, the
3   consequences to him of the plea, his constitutional rights;
4   and I further find the plea's supported by independent
5   factual basis containing each of the essential elements of
6   each offense.  So I will accept the plea and order that the
7   plea be entered.
8           As I mentioned to you earlier, Mr. Harrell, there
9   is going to be a written presentence report that will be
10  prepared.  You will have a chance to look at it.  So will
11  your lawyer.  So will the government.  You all will have a
12  chance to file any objections, and we'll have a hearing to
13  discuss your sentencing.  And at that time of your
14  sentencing, you can speak to the Court directly before I
15  sentence you.
16          So I am going to refer the matter to the probation
17  office for a presentence report in this case.  The proposed
18  date for sentencing is November the 5th at 11:00 A.M.
19          Does that date work for counsel?
20          Starting with the government.
21          MS. MYERS:  That date is fine for the government,
22  Your Honor.
23          THE COURT:  Ms. Savo?
24          MS. SAVO:  That's fine.
25          THE COURT:  Okay.  So November 5th at 11:00 A.M.
```

```
 1              You are ordered to appear at that date and time

 2   without any further order or notice of the Court.  We're

 3   going to vacate the jury trial date in this case as it

 4   relates to Mr. Harrell and the status conference of

 5   July 23rd.

 6              Anything further from the government?

 7              MS. MYERS:  No, Your Honor.

 8              THE COURT:  Ms. Savo, anything further?

 9              MS. SAVO:  Not at this time.

10              THE COURT:  All right, sir.  You are remanded back

11   to the custody of the marshal until your sentencing date.

12              Thank you, all.  Stay safe, and I will see you all

13   in November.

14              Although, Ms. Savo, I guess I will see you I think

15   later this afternoon.  Is that right?

16              MS. SAVO:  I am making your long day.

17              THE COURT:  You are going to be here in the

18   courtroom?

19              MS. SAVO:  Yes.

20              THE COURT:  I will see you then.

21              Thank you all.  Be safe.

22         (Proceedings concluded at 9:10 a.m.)

23                        --oOo--

24

25
```

```
 1                        CERTIFICATE

 2

 3       I hereby certify that pursuant to Section 753,

 4  Title 28, United States Code, the foregoing is a true and

 5  correct transcript of the stenographically reported

 6  proceedings held in the above-entitled matter and that the

 7  transcript page format is in conformance with the

 8  regulations of the Judicial Conference of the United States.

 9

10  Date:  May 24, 2022.

11

12

13

14                    /S/ CHIA MEI JUI

15               Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25
```